**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DIMAS ESTRADA, JR., | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | Civil Action No._____ |
| v. | ) | |
| | ) | |
| MIDLAND FUNDING, LLC, and | ) | |
| MIDLAND CREDIT MANAGEMENT, INC., | ) | |
| and BLATT, HASENMILLER, LEIBSKER | ) | |
| & MOORE, LLC, | ) | |
| and UNITED PROCESSING, INC., | ) | |
| and JONATHAN GRIFFIN, and JANE DOE, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## COMPLAINT

Plaintiff, Dimas Estrada, Jr., brings this action to secure redress from unlawful credit and collection practices engaged in by Defendants Midland Funding, LLC, Midland Credit Management, Inc., Blatt, Hasenmiller, Leibsker & Moore, LLC, UPI Processing, Inc., Jonathan Griffin, and Jane Doe. Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"), and the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/1 *et. Seq*.

## VENUE AND JURISDICTION

1.      Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 42 U.S.C. 1983, and 28 U.S.C. §§ 1331, 1337, and 1367, as Defendants do business in the State of Illinois and this district.

2.      Venue in this District is proper under 28 U.S.C. § 1391(b) because Defendants' collection demands were received here, a material portion of the events at issue occurred in this District, and Defendants reside and transact business here.

1

**PARTIES**

3.     Plaintiff, Dimas Estrada, Jr., ("Mr. Estrada"), is an individual and resident of Lake County, Illinois, from whom Defendants attempted to collect a delinquent consumer debt allegedly owed for a defaulted GE Money Bank consumer credit card account. Mr. Estrada is thus a "consumer" as defined at 15 U.S.C. § 1692a(3) of the FDCPA.

4.     Defendant, Midland Funding, LLC ("Midland") is a Delaware limited liability company with its principal place of business at 3111 Camino Del Rio N, #1300, San Diego, CA 92108. It does or transacts business in Illinois. Its registered agent and office are Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703.

5.     Defendant Midland is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

6.     Defendant Midland holds a collection agency license from the State of Illinois.

7.     Defendant Midland is a debt scavenger that specializes in buying large portfolios of defaulted consumer debts for pennies on the dollar, the full amount of which it then tries to collect through other debt collectors.

8.     Defendant Midland is in the business of taking title or claiming to take title to charged-off debts allegedly owed by consumers and originally owed to others.

9.     Defendant Midland then seeks to enforce the debts against the consumers through lawsuits. Midland uses the mails and/or telephone in connection with the prosecution of these lawsuits.

10.     Upon information and belief, Defendant Midland has paid an average of less than 5 cents on the dollar for the debts it has purchased or claims to have purchased.

2

11.     Defendant Midland was the plaintiff in over 3,000 collection lawsuits, seeking to collect defaulted consumer debts, pending in the Illinois courts during the twelve months preceding the filing of this action.

12.     Defendant Midland is a "debt collector" as defined by 15 U.S.C § 1692a(6) of the FDCPA, as it regularly collects defaulted consumer debts.

13.     Defendant Midland Credit Management ("MCM") is a Kansas corporation with its principal place of business at 3111 Camino Del Rio N, Suite 1300, San Diego, CA 92108-8875. MCM does or transacts business in Illinois. Its registered agent and office is Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703.

14.     Defendant MCM is a collection agency and collects the debts held in the name of Midland Funding, LLC.

15.     Defendant MCM holds a collection agency license from the state of Illinois.

16.     Defendant MCM is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) of the FDCPA, as it regularly collects defaulted consumer debts.

17.     Defendant, Blatt, Hasenmiller, Leibsker, & Moore LLC ("Blatt"), is a collection law firm headquartered in the city of Chicago, that acts as a "debt collector" as that term is defined by 15 U.S.C. §1692a(6). Blatt is engaged in the business of collecting defaulted consumer debts in this State where it regularly collects or attempts to collect debts owed or due, or asserted to be owed or due another, and whose principal purpose is the collection of delinquent consumer debts using the mails and/or telephone.

18.     Defendant, United Processing, Inc., ("UPI") is a private detective agency that also acts debt collector as defined by the FDCPA, 15 U.S.C § 1692a(6), and is located in and does business within this District.

3

19.     UPI maintains a website, www.unitedproc.com, which states in part as follows as of the date of the filing of this complaint: "United Processing, Inc. (UPI) opened its doors June, 1990 in Chicago, IL and has been serving the legal community as well as the private sector in the Chicago, Illinois area for over twenty years. UPI's staff consists of 25 investigators and 15 office staff personnel. Our staff of professionals service not only the Chicago area, but nationwide as well. United Processing is a privately chartered corporation licensed to conduct a broad spectrum of investigative services. Our Clientele includes law firms, management companies, insurance agencies, financial institutions, technology companies, government agencies or any other individual(s). Services are custom designed to reduce and manage risk whiles increasing efficiency and effectiveness." And "All service documents and affidavits are scanned and uploaded utilizing our bar code recognition software allowing clients access via our secure web portal."

20.     UPI acts as a debt collector by providing debt collection support services to collection attorneys, third-party debt collectors and debt buyers, via "investigative services" and by servicing documents as stated on its website.

21.     Defendant, Jonathan Griffin ("Mr. Griffin") is, or was at the time of the actions complained of in this Complaint, an agent and/or employee of UPI working as a debt collector as defined by § 1692a(6) of the FDCPA.

22.     Defendant, Jane Doe is, or was at the time of the actions complained of in this Complaint, an agent and/or employee of UPI working as a debt collector as defined by § 1692a(6) of the FDCPA.

## FACTS COMMON TO ALL COUNTS

23.    At some time in or around the year 2009, Mr. Estrada incurred a GE Money Bank/JC Penny credit card debt for personal, family or household purposes, and thus Mr. Estrada incurred a debt ("alleged debt") as that term is defined at § 1692a(5) of the FDCPA.

24.    Mr. Estrada is a natural person obligated or allegedly obligated to pay the alleged debt and is therefore a consumer as that term is defined at § 1692a(3) of the FDCPA.

25.    Due to financial difficulties, Mr. Estrada could not afford to pay the alleged debt, and it thereafter went into default.

26.    The alleged debt was thereafter sold, assigned, or otherwise transferred to Midland Funding, LLC.

27.    The alleged debt was thereafter assigned to Defendant Blatt for the purpose of collection of the alleged debt from Mr. Estrada.

28.    In or around February, 2010, Defendant Blatt filed a lawsuit against Mr. Estrada in the Circuit Court of the Nineteenth Judicial Circuit, Lake County, styled as *Midland Funding LLC v. Dimas Estrada*, case no. 12 SC 06340 ("State Action"), to collect the alleged debt in the amount of $1078.35 plus costs. (Exhibit A, State Action, complaint and summons).

29.    Defendant Blatt thereafter hired Defendant UPI to support efforts to collect the alleged debt from Mr. Estrada.

30.    Defendant UPI has an Illinois Private Detective Agency License # 117-001101.

31.    Plaintiff's mother, Dora Estrada, lives at 1157 Midlothian Road, Mundelein, Illinois.

32.    Plaintiff does not live at 1157 Midlothian Road, in Mundelein, Illinois.

33.    Plaintiff had not lived at his parents' house on 1157 Midlothian since in or around June, 2009.

34.    On or around January 22, 2013, Plaintiff's mother, Dora Estrada ("Mrs. Estrada"), was at her home when an unknown female, defendant Jane Doe, approached Mrs. Estrada.

35.    Jane Doe handed Mrs. Estrada a copy of the alias summons and complaint in the State Action in an attempt to serve process on Plaintiff.

36.    Upon looking at the documents, Mrs. Estrada realized that the alias summons and complaint were for her son, Mr. Estrada who had not lived at that address in about 3.5 years.

37.    Mrs. Estrada immediately notified Jane Doe that the alias summons and complaint were for her son and that he did not live at that address.

38.    Jane Doe responded that she was going to leave the alias summons and complaint there anyway and left.

39.    At no other time in or around January 2013, or February 2013, did a male process server, or any other process server, communicate with Mrs. Estrada in connection with the State Action, or any other action.

40.    On or around February 11, 2013, UPI, by and through Defendant Jonathan Griffin, using License # 117-001101, executed a false Affidavit of Service ("Affidavit"). (Exhibit B, Affidavit of Service).

41.    Upon information and belief "Jonathan Griffin" is a male.

42.    Upon information and belief "Jonathan Griffin" is not Jane Doe.

43.    In his Affidavit, Jonathan Griffin ("Mr. Griffin") falsely claimed that he had effectuated service on Plaintiff via substitute service on Mrs. Estrada. (Exhibit B, Affidavit of Service).

6

44.     Mr. Griffin did not effect substitute service on Plaintiff through Mrs. Estrada on January 22, 2013, or any other time.

45.     Mr. Griffin did not have any contact with Mrs. Estrada on January 22, 2013, or any other time.

46.     Mr. Griffin states in his Affidavit that Plaintiff's usual place of abode on January 22, 2013, was 1157 N. Midlothian Rd., Mundelein, IL 60060.

47.     Plaintiff's usual place of abode on January 22, 2013, was not at the 1157 N. Midlothian Rd. address.

48.     In fact, the 1157 N. Midlothian Rd. address had not been Plaintiff's usual place of abode since in or around June 2009, over three and a half years prior to the alleged substitute service.

49.     Defendants Midland, Blatt, UPI, Mr. Griffin, and Jane Doe knew or should have known that Plaintiff did not live at the 1157 N. Midlothian St. address at the time of the alleged substitute service.

50.     Mr. Griffin further stated in his Affidavit that "On January 24, 2013, I mailed a copy of the SUMMONS/COMPLAINT in a sealed envelope with postage fully prepaid, addressed to DIMAS ESTRADA at his/her usual place of abode." (Exhibit B, Affidavit of Service).

51.     Plaintiff did not receive a copy of the summons and complaint in the State Action around January 24, 2013, or anytime thereafter, at his usual place of abode at that time.

52.     Mr. Griffin did not mail a copy of the summons and complaint in the State Action to the 1157 N. Midlothian address, or any other address, on January 24, 2013, or on any other date.

53.     On or around February 11, 2013, Defendants presented false testimony in the Circuit Court of the Eighteenth Judicial Circuit, Lake County, under Case no. 12 SC 06340, when they filed the Affidavit of Service.

54.     Plaintiff was never served with a copy of the summons and complaint in the State Action and was unaware of the State Action against him.

55.     On April 22, 2013, default judgment was entered against Mr. Estrada as the result of the false testimony Defendants provided to the court regarding service of process upon the Plaintiff. A copy of the judgment was not mailed to Mr. Estrada at any time after the entry of the same. (Exhibit C, Default Judgment Order).

56.     Plaintiff was unaware of the default judgment entered against him as he was still unaware of the State Action against him.

57.     Defendants Midland, Blatt, UPI, Mr. Griffin, and Jane Doe conspired to deprive Mr. Estrada of equal protection of the law, namely to deprive him of his due process right to proper notice of the lawsuit.

58.     Neither UPI, Mr. Griffin or Jane Doe ever effected service upon Mr. Estrada.

59.     Defendant Mr. Griffin on behalf of UPI and Blatt made false statements in an attempt to enforce collection of a consumer debt.

60.     Defendants UPI and Mr. Griffin's conduct went beyond merely being a messenger in serving legal process.

61.     Rather, Defendants made false sworn written statements, and filed and presented said statements in court in order to attempt to enforce and collect an alleged consumer debt from Mr. Estrada.

62. On May 30, 2013, after entry of the default judgment, Defendant Blatt executed false documents in effecting a wage deduction from Mr. Estrada, including a false wage deduction affidavit, which misrepresented the costs and charges that Defendants were entitled to in connection with the garnishment, in violation of section 1692e(2) of the FDCPA. (Exhibit D, Affidavit For Wage Deduction Orders and Wage Deduction Summons).

63. Defendant Midland, through its attorneys Defendant Blatt, mailed an "AFFIDAVIT FOR WAGE DEDUCTION ORDERS" date stamped May 30, 2013, to Dora Estrada, Plaintiff's mother, at Estrada Customs, where Defendants Midland and Blatt alleged Plaintiff worked, in an attempt to garnish Plaintiff's wages.

64. The Affidavit for Wage Deduction Orders lists Plaintiff's alleged last known address as 1157 Midlothian Rd., Mundelein IL 60060.

65. Mr. Estrada did not work at Estrada Customs on or around May 30, 2013, and was not aware of the garnishment.

66. Mrs. Estrada returned the Affidavit for Wage Deduction Orders, signed and dated, along with a note attached to the face of the document that stated "Does not work here. Does not live at that address." (Exhibit E, returned Affidavit for Wage Deduction Orders).

67. Midland and Blatt knew or should have known that Plaintiff did not live at the 1157 Midlothian address at or around May, 2013.

68. The Affidavit for Wage Deduction Orders and Wage Deduction Notice list Plaintiff's address as the 1157 N. Midlothian address, at which Defendants Blatt and Midland knew or should have known Plaintiff did not live.

69. On February 24, 2016, over 3 years after the complaint in the State Action against him, Plaintiff's employer notified him that his wages would be garnished.

70.     The notice from his employer was the first Mr. Estrada had heard of the State Action against him.  (Exhibit G, Wage Deduction Summons, Notice and Affidavit). The Affidavit misrepresents costs and charges that Plaintiff owes in connection with the Wage Deduction Summons, in violation of section 1692e(2) of the FDCPA.

71.     Mr. Estrada was shocked and confused as to why his wages would be garnished.

72.     On February 24, 2016, Mr. Estrada placed a telephone call to Midland and/or MCM and spoke to a "John Parker" who requested personal identifying information, that Mr. Estrada provided, and then transferred Mr. Estrada to a female agent or employee of Midland's in the "Consumer Support Services".

73.     During the pendency of the telephone conversation Mr. Estrada disputed the debt with Midland.

74.     Mr. Estrada requested information on the account and was told, among other things, that the amount due to Midland was $1,520.82, the date of charge off, date the account was opened. The telephone conversation was a communication as defined by § 1692a(2) of the FDCPA.

75.     The telephone call was the initial communication with Midland and/or MCM regarding the alleged debt.

76.     At the end of the conversation Midland's and/or MCM's agent or employee instructed Mr. Estrada to call Defendant Blatt for more information.

77.     On February 24, 2016, thereafter on that same day, Mr. Estrada did call Defendant Blatt.

78.     Mr. Estrada spoke to an agent or employee of Blatt and discussed the alleged debt. The telephone conversation was a communication as defined by § 1692a(2) of the FDCPA.

10

79. Mr. Estrada asked the amount that was due and Blatt's agent or employee communicated that the amount due was $1618.69, almost $300 more than what Midland and/or MCM told him the amount due was that very same day.

80. Section 1692g(a) of the FDCPA states:

**(a)NOTICE OF DEBT; CONTENTS**
**Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—**
**(1) the amount of the debt;**

**(2) the name of the creditor to whom the debt is owed;**

**(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;**

**(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and**

**(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.**

81. Thus, a debt collector is required to send a debtor a written notice containing the information enumerated in § 1692g(a)(1)-(5) within 5 days of the initial communication with a debtor.

82. Midland and/or MCM did not send Mr. Estrada a written communication containing the information required by § 1692g(a)(1)-(5) thus violating that section of the FDCPA.

83. Blatt did not send Mr. Estrada a written communication containing the information required by § 1692g(a)(1)-(5) thus violating that section of the FDCPA.

11

84.     15 U.S.C. § 1692e of the FDCPA provides as follows:

> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> ·····································
>
> **(2) The false representation of—**
>     **(A) the character, amount, or legal status of any debt;**
>
> ·····································
>
> **(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

85.     Defendants Midland and/or MCM and Blatt violated §§ 1692e, e(2)(A), and e(10) of the FDCPA when they made false, deceptive, or misleading representations by falsely representing the character, amount, or legal status of the debt when they provided Mr. Estrada with two different amounts due on the same day, both of which could not be true.

86.     Mr. Estrada hired and paid counsel to attempt to quash service, vacate the default judgment entered against him, and attempt to recover wages that Blatt wrongfully garnished from his paycheck. Mr. Estrada paid the costs associated with appearing and filing the motion.

87.     Mr. Estrada's counsel thereafter filed a Motion to Quash Service and Strike Citation in the State Action.

88.     On April 20, 2016, at a hearing on Mr. Estrada's motion, the court in the State Action granted Mr. Estrada's Motion to Quash Service and Strike Citation and entered and Agreed Order. (Exhibit F, Order in State Action).

89.     The April 20, 2016, Order in the State Action ordered the following:

    a.  Defendant's Motion to Quash Service and Strike Citation was granted;

    b.  Service of process on January 22, 2013 was quashed;

    c.  Default judgment of April 22, 2013 was vacated;

    d.  Funds garnished to date were required to be returned to Mr. Estrada;

12

e. Plaintiff was granted leave to issue alias summons;

f. Judgment was vacated.

90. Mr. Estrada was without use of the money that was wrongfully garnished from his paycheck, until said money was returned to him in May, 2016, and was damaged thereby.

91. Upon information and belief, at the time Blatt hired UPI and its employee and/or agent Mr. Griffin to support efforts to collect the alleged debt from Mr. Estrada, Blatt was already aware of numerous instances in which consumers averred that they were not served with complaint and summons by UPI, as UPI had executed false affidavits stating that service had in fact been made on said consumers in lawsuits where said consumers were defendants in those lawsuits.

92. As a debt collector, Blatt may be held vicariously liable for UPI, Mr. Griffin's and Jane Doe's collection activity. Midland is liable for the actions of Blatt, committed in connection with the collection of the alleged debt from Plaintiff. *Janetos v. Fulton Friedman & Gullace, LLP*, No. 15-1859, 2016 U.S. App. LEXIS 6361, at *20 (7th Cir. Apr. 7, 2016) ("Asset Acceptance is itself a debt collector, so under the logic of *Pollice* and *Fox*, it may be held liable for Fulton's violations of the Act in the course of activities undertaken on its behalf.").

93. Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard. (*See Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

## COUNT I-FAIR DEBT COLLECTION PRACTICES ACT-BLATT, UPI, JONATHAN GRIFFIN AND JANE DOE

94. Plaintiff realleges and incorporates foregoing paragraphs into this count.

95. Defendants acted as debt collectors, as defined by the FDCPA, with respect to Plaintiff, they each attempted to collect a defaulted consumer debt via their respective actions, specifically described *supra*.

96. Defendant UPI regularly attempts to collect debts by assisting debt collection lawyers, like Blatt, in debt collection by, for example, filing affidavits in connection with the collection of debts, by performing research on alleged debtors, and by performing skip-tracing in connection with the collection of defaulted consumer debts.

97. Under 15 U.S.C. § 1692a(6)(D), any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt is not included as a debt collector, but the language of § 1692a(6)(D) extends the exemption to a person only "while serving or attempting to serve legal process." See *Spiegel v. Judicial Attorney Servs., Inc*., 2011 WL 382809 (N.D. Ill. Feb.1 2011; *Romea v. Heiberger & Assocs*., 163 F.3d 111 (2nd Cir. 1998); *Andrews v. S. Coast Legal Servs*., 582 F. Supp. 2d 82 (D. Mass. 2008); and *Flamm v. Sarner & Assocs., P.C.*, 2002U.S. Dist. LEXIS 22255 (E.D. Penn. 2002); *Sneed v. Winston Honore Holdings, LLC*, No. 16 C 2564, 2017 U.S. Dist. LEXIS 15235, at *11 (N.D. Ill. Feb. 3, 2017).

98. Defendants UPI, Mr. Griffin and Jane Doe were not serving or attempting to serve "legal process" when they allegedly served Plaintiff, but rather they deceptively left the State Action complaint and summons at the 1157 Midlothian address where they knew or should have known that Plaintiff did not live, which was not valid service of legal process. This fact, in addition to Defendants' act of drafting, preparation and filing of false affidavits of service, and providing false testimony—all to aid in collection of the consumer debt from Plaintiff, was calculated to induce Plaintiff to believe that he was properly served, and to coerce him to believe

that he would thus be required pay the default judgment, by wage garnishment or other means, so that Defendants could bypass the Illinois legal requirements pertaining to obtaining service over Plaintiff.

99.     Section 1692e of the FDCPA states in relevant part that a debt collector, "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt" and §1692e(13) prohibits the "false representation or implication that documents are legal process."

100.     Defendants made false, deceptive and misleading representations in connection with the collection of a debt, in violation of Section 1692e, by means of the false Affidavit of Service they prepared, filed and communicated, and by means of the complaint and summons left at an address where Defendants knew or should have known that Plaintiff did not reside, which falsely and deceptively was an attempt to induce Plaintiff to believe that he was properly served, when in fact he was not.

101.     Defendants violated section 1692e(13) of the FDCPA by leaving a copy of the alias summons and complaint filed in the State Action at an address that Plaintiff did not reside at, which falsely implied that service had been obtained over Plaintiff and that the documents were "legal process."

102.     Section 1692e(5) of the FDCPA proscribes the "threat to take any action that cannot legally be taken or that is not intended to be taken."

103.     Defendants falsely threatened that Plaintiff was required to enter an Appearance in the State Action when they left the alias summons and Complaint at an address Plaintiff did not reside at, which indicated that Plaintiff was required to file an Appearance by a date certain when, in fact, he was not required by law to do so. Defendants also falsely threatened, in the

Summons, that a judgment would be entered if Plaintiff did not appear, when this was false. These actions violated section 1692e(5).

104. Section 1692e(2) of the FDCPA proscribes "The false representation of—

**(A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.**

105. Defendants violated Section 1692e(2)(B) by falsely claiming that they had served Plaintiff, and thus they misrepresented the services rendered in connection with the collection of the Alleged Debt.

106. Section 1692e(10) of the FDCPA proscribes "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

107. Defendants violated Section 1692e(10) by means of the complaint and alias summons left at an address at which Plaintiff did not reside at, which falsely and deceptively was an attempt to induce Plaintiff to believe that he was properly served, when in fact he was not, all in order to collect the Alleged Debt from him via litigation, specifically, by a default judgment.

108. Defendants Midland, MCM and Blatt violated Section 1692€, e(2)(A), and e(10), when they used false, deceptive, or misleading representations in connection with the collection of the alleged debt when they provided Mr. Estrada with two different amounts that were due, on the same day, both of which could not be true.

109. Defendants Midland, MCM, and Blatt violated Section 1692g(a)(1)-(5) of the FDCPA when they failed to provide Mr. Estrada with written notification of the information required by that section within 5 days of the initial communication with him.

110.     Plaintiff was damaged as a direct and proximate result of Defendants' conduct in that he incurred financial loss and lost time, and suffered, inter alia, emotional distress, worry, aggravation, anxiety, restlessness, nervousness, sleeplessness and inconvenience.

111.     At all times relevant hereto, all actions taken by UPI were authorized, directed, and/or ratified by Blatt.

112.     Blatt hired UPI despite the fact that it was aware that defendant UPI had previously repeatedly made false service on consumers in debt collection cases.

113.     At all times herein mentioned, Defendants are and were agents and/or joint venturers of each other, and in doing the acts alleged herein were acting within the course and scope of such agency.

114.     Each of the Defendants had actual and/or constructive knowledge of the acts of the other Defendants as described herein, and ratified, approved, joined in, acquiesced in, and/or authorized the acts of the other, and/or retained the benefits of said acts.

WHEREFORE, Plaintiff, Dimas Estrada, Jr., asks that the Court enter judgment in their favor and against Defendants Blatt, UPI, Jonathan Griffin, and Jane Doe as follows:

A.  Statutory damages from each Defendant pursuant to the FDCPA, 15 U.S.C. §1692(k)(a)(2);

B.  Actual Damages pursuant to the FDCPA, 15 U.S.C. §1692(k)(a)(1) ;

C.  Reasonable attorney's fees and costs; and

D.  Any other relief that this Court deems appropriate and just under the circumstances.

## COUNT II-VIOLATION OF ILLINOIS CONSUMER FRAUD ACT-DEFENDANTS MIDLAND, MCM AND UPI

115.     Plaintiff realleges and incorporates the foregoing paragraphs into this Count.

116.    815 ILCS 505/1 et. Seq. prohibits unfair and deceptive practices committed in the course of trade and commerce in Illinois.

117.    Defendant Midland engaged in the course of trade and commerce when it hired Blatt and UPI to aid in collection efforts against Plaintiff, when they provided false Affidavits of Service against Plaintiff, and when they left copies of the Complaint and Alias Summons at an address Plaintiff did not reside at to induce Plaintiff to believe he was properly served at a time that no service had been obtained over Plaintiff.

118.    Defendant UPI is engaged in the distribution of services that directly and indirectly affect the people of Illinois, namely services related to serving process.

119.    Defendants UPI and Midland and/or MCM committed a deceptive act or practice when they drafted, executed and provided to the court and to Plaintiff a false Affidavit of Service that misrepresented that Plaintiff was served via substitute service with a copy of the alias summons and complaint in the State Action, and when they left a copy of the complaint and summons at an address Plaintiff did not reside at to induce Plaintiff to believe he was properly served at a time that no service had been obtained over Plaintiff.

120.    Blatt hired UPI, on behalf of Midland and/or MCM, to support efforts to collect the Alleged Debt. UPI offered its services for sale and Midland purchased them, which is an act involving trade and commerce.

121.    Midland and/or MCM directed, ratified and accepted the benefits of Blatt and UPI's actions.

122.    Midland and/or MCM hired Blatt and UPI to support efforts to collect the Alleged Debt.

123.    Defendants committed a deceptive act or practice when they falsely testified in an Affidavit of Service drafted and filed by Blatt, that UPI had served Plaintiff via substitute service.

124.    Defendants did not serve Plaintiff, who is a consumer under the Act, with process at any time prior to the date of filing of this Complaint.

125.    Defendants intended that Plaintiff would rely on the deception, and intended that he would be led to believe that since a copy of the summons and complaint were left at a residence he had lived at years earlier, that they had obtained jurisdiction against Plaintiff, and that he would believe that the default judgment entered against him was valid and that the wage garnishment was lawful.

126.    Plaintiff suffered actual damages as a proximate result of Defendants' conduct in that Plaintiff incurred financial loss and lost time by having to hire an attorney to quash service, vacate the default judgment, strike the garnishment, and have his wages returned to him, in the State Action.

127.    Defendants' conduct also constituted an unfair practice.

128.    Defendants' conduct offends public policy.

129.    Defendants' practice offends public policy as it has been established by the Constitution, statute and the common law.

130.    Defendants' act of providing a false Affidavit of service offends the public policy of the constitutional guarantee of the due process right to notice and an opportunity to be heard.

131.    Defendants' act of providing false testimony offends public policy as established by § 720 ILCS 5/32-2 Perjury statute.

132.    Defendants' act of providing false testimony is immoral.

133.    Defendants' act of providing false witness is an unethical act by person who is an Illinois licensed private detective.

134.    Defendants' act of sewer service is oppressive, unscrupulous and causes substantial injury to consumers.

135.    Sewer service has long been recognized as harmful unlawful practice. See *Scarver v. Allen*, 457 F.2d 308, fn. 1 (7th Cir. 1972); *UPI States v. City of Philadelphia*, 644 F.2d 187 (3rd Cir. 1981); *Blouin v. Dembitz*, 489 F.2d 488 (2nd Cir. 1973); See *UPI States v. Wiseman*, 445 F.2d 792, 796 (2nd Cir.), cert. denied, 404 U.S. 967, 30 L. Ed. 2d 287, 92 S. Ct. 346 (1971); *UPI States v. Brand Jewelers, Inc.*, 318 F. Supp.1293 (S.D. N.Y. 1970).

136.    At all times herein mentioned, Defendants, both individually and collectively, are and were agents and/or joint venturers of each other, and in doing the acts alleged herein were acting within the course and scope of such agency.

137.    Each of the Defendants had actual and/or constructive knowledge of the acts of the other Defendants as described herein, and ratified, approved, joined in, acquiesced in, and/or authorized the acts of the other, and/or retained the benefits of said acts.

WHEREFORE, Plaintiff, Dimas Estrada, Jr., asks that the Court enter judgment in his favor and against Defendants Midland and/or MCM, and UPI, as follows:

A.    Actual damages;

B.    Punitive Damages;

C.    Reasonable attorney's fees and costs; and

D.    Any other relief that this Court deems appropriate and just under the circumstances.

## **JURY DEMAND**

Plaintiffs demand trial by jury.

20

By: /s/ Mario Kris Kasalo
Mario Kris Kasalo

**The Law Office of M. Kris Kasalo, Ltd.**
20 North Clark Street, Suite 3100
Chicago, Illinois 60602
tele 312-726-6160
fax 312-698-5054
mario.kasalo@kasalolaw.com

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount
as a court awards. All rights relating to attorney's fees have been assigned to counsel.

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that defendants take affirmative steps to preserve all recordings,
data, documents, and all other tangible things that relate to plaintiff, the events described herein,
any third party associated with any telephone call, campaign, account, sale or file associated with
plaintiff, and any account or number or symbol relating to them. These materials are likely very
relevant to the litigation of this claim. If defendants are aware of any third party that has
possession, custody, or control of any such materials, plaintiff demands that defendants request
that such third party also take steps to preserve the materials. This demand shall not narrow the
scope of any independent document preservation duties of the defendants.

By: s/ Mario Kris Kasalo
Mario Kris Kasalo